Yes, if it may please the Court, my name is James Dodd Bennett, and I'm appearing on behalf of the petitioner Binyam Kifle, and... I'm sorry, how do we pronounce his last name? Kifle. Kifle? Kifle. Kifle. His full name is Binyam Negash Kifle. All right, well, I knew I had... So somehow I just had this gut feeling that I was mispronouncing it. People mispronounce my name all the time. Okay, all right. I'd like to reserve five minutes out of the 15. Of course. First issue raised by the Court's order is the issue of mootness. And what we need is an actual case at issue, otherwise it's subject to dismissal, as we know under the rule. There's four exceptions that I've been able to ferret out to the doctrine of mootness, two of which one which definitely applies and the other one which might. Just parenthetically, the agency capable of repetition rule. That would apply to somebody else. And I have to say, in a long time on the Court, I haven't seen anything like this. So what are the possible consequences to Mr. Kifle? Can he possibly come back into the United States? Under what circumstances can he come back? And what difference does our judgment make in his return to the United States? If we find in your favor, does the Attorney General have to send him a plane ticket and let him come back? Yes. The doctrine the Court's addressing, and I believe is probably the stronger issue, would be the collateral consequence doctrine. And that applies to both petitions to review and habeas proceedings in this circuit. And I know at least five other circuits in the immigration context apply the same rule. The order here, the collateral consequences that he suffers directly are twofold. Number one, he's got a permanent bar as a result of this order. Under 8 U.S.C. 1182a 9a too little eyes, he'd have a 20-year bar against re-immigrating as an aggravated felon. That was because of the order of removal, right? That is correct. But we're not dealing with that. We're just dealing with the issue of the right country and withholding. So isn't that – I don't see how that's a collateral consequence of what we do. Part of its problem of how the government's approached this case and the very strange order of the BIA, this case is essentially a motion to reopen, and that was the basis upon which the – But you're not reopening on anything that has anything to do with the aggravated felony. That's Judge Edelman's point. Correct. From the beginning, he was forthright enough with the BIA and with the court to concede that problem. Right. That was when he was appearing in pro se. So there's no issue there. That is a final order as to that issue. And the BIA gets that part right. And under Gomes, that would be an unreviewable issue in this circuit. However, the relief that he was seeking was a 243A – excuse me, 231B3 withholding, and that would have withheld his removal had he been granted the relief, but for the other due process and issues of law that are raised in the petition. That would have precluded the removal, and that's where the issue does dovetail. I believe under the collateral consequence doctrine, I have to – it has to be an issue traceable, a collateral consequence traceable to the actual injury. So if we thought that he – if we thought that he had – that the BIA had not afforded him all the process that was due, we would have to do what? We have to – we have to send him a ticket? The remedy would be to bring him back and get his hearing. And the problem with this case is this. The government's position is this was simply a post-order, under Jarma-type disposition. We couldn't find a country. We went all the way down the scale, and here we are at the bottom, any country willing to take him, and that turned out to be Ethiopia. The problem with this is, is that wasn't the BIA's original order. The motion to reopen was ruled upon by the judge, immigration judge in San Diego, appealed to the BIA administratively. Then the BIA issued an order reversing that decision and basically saying we're reopening this case under, I believe it was 8 CFR 1003.23B4I, which is changed country circumstances. And they – and then remanded it down to the immigration judge. Then there was a change of venue. That is – the problem with that is, is then the BIA comes back in its next order after – on the appeal from the denial of relief as to removal to Ethiopia and says, oh, well, really this was just a – simply a remand for determining whether he should get withholding. The problem with that is, if the BIA and the government is correct, then they run afoul of their own regulation, and that regulation is 8 CFR 1241.15, which says any determination, a JARMA-type determination by the agency, is not reviewable by the BIA or the immigration judge. So essentially from the get-go, the BIA has violated its own regulations. It's violated – Maybe you could help me cut to this problem. What kind of process has Mr. Kifla been denied here? What hearing didn't he get that he should have gotten and has been prejudiced thereby? I mean, as I read the record, whatever missteps there might have been, if any missteps, between DHS and BIA and the IJ surely were cured when we sent it back to the IJ, he said, hold a hearing as to whether this guy is going to be tortured if he gets sent to Ethiopia, and let all the evidence come in about his father's relationship with the Eritreans and the current president of Ethiopia and so forth. He's had a full hearing on the merits here, and the BIA has reviewed that. What's the problem? The problem is, Your Honor, essentially we're looking at a post-RIDA-type structure, and that's a Real ID Act, I'm sorry, 2005. And under that structure, we're getting a substitute for habeas. And if we're going to have a substitute for habeas and put it on the administrative agency, they've got to comply with their regulations. Otherwise – Okay. So what didn't your client get that he needed to have? What hearing didn't he have? What process didn't he get before an IJ or the BIA that he should have gotten and that you can show some kind of prejudice for? Well, if he's read the injury that can be redressed, essentially boils down to the second aspect, including the permanent bar, goes back to the issue of whether or not he got a fair hearing on his withholding claim. And that goes back to the issue of whether the designation or the BIA's ruling and it completely ignoring its own administrative law precedents, that families are not social groups as the protected ground. That's something he needs a rehearing on. That's what the issue is. Well, what happened? Let's say we gave him a rehearing and we said, okay, we were wrong about withholding and we shouldn't have sent him to Ethiopia. Then what happens? He's already there. He doesn't come back. Nobody gives him a ticket to come back. I mean, the whole – we can't do anything for him. That's sort of the concern that I have. I believe if the Court made an order and if the Court didn't feel it could enforce it, he would have – What order would we make? Order to return him and give him his hearing. He's already had a hearing. We've heard all the evidence about his father, about his father's relationship. I understand. But the issue is the problems of the BIA's ruling go beyond that. They ruled on the merits. And ruling on the merits, they didn't apply their own social group analysis as to families. They didn't apply the presumptions that apply under past persecution as to the past persecutions. But he has no evidence of past persecution. His father might have an argument for that. His father is here in the United States. But that's because he is a member of the social group, the family. Social group being a family. Okay. Has the BIA ever recognized that? Have we ever recognized that, that if my father gets persecuted and there's no evidence that anybody is looking for me? I think that Mr. Zanawi is dead, right? He is dead as of 20th of August. Right. He's been dead for six months. And the evidence here is your client hasn't been politically active. There's no evidence that anybody's made a threat against him. We haven't heard anything about his family. It's been more than 20 years since his father had this confrontation with Zanawi. So where's the evidence of injustice? Now, my point is, and I don't want to sound like a parrot, but the problem is, is that he needs to get a hearing and they need to apply the proper standards. They didn't apply their own administrative law standards in this case. In the brief, I've spelled out the administrative law proceedings. Thomas has been reversed in this circuit. It's a Supreme Court decision, but the other precedents apply as well. That's what he's missing. He's missing a hearing applying the proper standard. And the proper standard here is the one relating to social group, meaning a family, a social group. That is correct. And that's raised in this petition, along with the presumption of future persecution due to the fact, the continuing problems. Now, Hedera in this circuit says that the continuing change, if I remember, it's Hedera, one of the precedents states that if there are changes in the regime, nonetheless, that doesn't necessarily preclude the finding of future persecution under the presumption. Hedera does involve family groups, a family group, and the son in that case was not active in Ethiopia at any time. He was active elsewhere, but not in Ethiopia. It's somewhat similar in the other cases. Now, I'm looking at the BIA's decision of November 2008, and they refer to the arguments about social group status. Correct. The problem is, is the social group finding under their precedents, family is a definable social group. Family is an established social group under BIA precedent and under this circuit's precedent. They don't go there. They don't say, okay, there's a, there's a, they don't find us a, one of the protected grounds, which is what that issue is, and then connecting it to the, then you have to find, taking that step, then you go find, determine whether there's persecution. Now, unless they made that initial finding and applied their own standards to making that finding, he's got a, not only an issue of law, but a due process violation because the BIA is not applying its own interim decisions. Now, if the problem as to jurisdiction, I think right now the Morales exception applies to this case, and it's also a question of the strictness of jurisdiction. So I do believe that this Court does have jurisdiction over this case, contrary to the concurring opinion in Penchikov, which I understand now is on petition for review, has been filed at any rate on, as of the 10th of this month. Now, the Counsel, I don't know if you were interested in saving any time, but you're now down below two minutes if you, if you were interested in saving time. I'll reserve my two minutes. Okay. Let's hear from the government. Mr. Wiggers. May it please the Court. My name is Edward Wiggers, and I represent the Respondent in this matter. And since Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act in 1996, the general rule has been that a petitioner may continue to prosecute his petition for review post-removal. And accordingly, petitioners' claims for protection of removal, withholding and cat protection, would remain viable, absent an indication a petitioner wished to abandon them. So you're suggesting the case is not moot? Yes, Your Honor. What's the difference between this and the Cower case? Please, that's a precedent in this circuit. So could you distinguish that case, this case from that case? Certainly, Your Honor. The Cower case involved two petitioners, Ms. Cower and her husband, Mr. Chima. Mr. Chima was the one who was involved in the discussion centering around mootness. Right. Mr. Chima was a Sikh terrorist subject to the terrorist bar, but he was also in detention in various county jails in California for a period of eight years prior to the petition for review that resulted in the Cower decision, this Cower decision. And prior to this Court's, those proceedings, Mr. Chima, who had a grant of deferral removal under CAT, went back to the immigration judge and asked that his grant of deferral be rescinded in order for him to be removed back to India. And India was the country from which he had the grant of deferral. So he specifically requested to return to the country from which he had sought and obtained protection. And that fact is an essential fact of the Cower's mootness analysis, especially in light of the Court's prior precedent in Granados-Oceguera, the case we cited in our second 28J letter, which talks about when, in that case, it was a question of whether DHS's finding that the petitioner had abandoned an I-140 application in employment. But in Granados, the petitioner was still in this country, and he was seeking cancellation of removal. I mean, in our case, the guy is already in Ethiopia, and the issue is withholding of removal. So I don't quite follow you. I may be misrecalling, Your Honor, but it was my recollection that in Granados there had been a removal. And in any event, Granados said there has to be an actual display of voluntariness in order for the mootness doctrine to deprive the opportunity for the petitioner to pursue his claims for protection. Let's suppose that we decided to grant the petition here. What happens? It's my understanding, Your Honor, that when a petition for review is granted in these circumstances, that DHS facilitates the return of the alien in order to pursue the further proceedings. They would bring him back. I don't know to what extent that facilitation. I can't speak to that off the top of my head. But there would be an effort made to help him return in order to pursue the additional proceedings that would follow the court's order. The court's order would address whether there was error relating to the denial of protection and finding it in your hypothetical, Your Honor, would send the case back to the board. DHS would take the steps necessary for the further proceedings to transpire. But, Your Honor, with the Granados case, the court noted that for a party seeking to avail itself of mootness, that party has to overcome a heavy burden to show that it's absolutely clear that there's no legal relief remaining for the opposing party. And we cannot meet that burden in this case because the court could remand to the board for further proceedings on protection that would not be mooted by DHS. And we cannot meet that burden by the fact that Petitioner has been removed at this point. And furthermore, this case is somewhat unique in its posture as far as the initial case relating to Sudan and then the reopening when Sudan refused to issue a travel document and Eritrea refused to issue a travel document. So it's not entirely clear, Your Honor, that the removal aspect is totally divorced from this case in its unique posture. But in any event, there are collateral consequences because Petitioner can pursue the withholding and CAT claims. That would appear to stand in distinction to the claim that there was a failure to show sufficient proof relating to the decision to designate Ethiopia as the country of removal. As Petitioner's counsel noted, that is beyond the jurisdiction of the boards of the immigration judges to consider. That is not part and parcel, then, of the agency's decision, which is the subject of this Court's review. And that claim would be moved in light of his removal. And I would make one note with an assertion made during counsel's argument that the remand was based for changed country conditions. It was more a question of fundamental fairness because there was the change to Ethiopia from Sudan as a result of DHS's inability to obtain travel documents for Petitioner. And it was more a question that since we're sending Petitioner to a country, he needs to have an opportunity to at least seek protection from that country. And subject to the Court's questions, that would conclude our presentation. I have a question about the concurrence and what is it, Judge Graber's concurrence. Are you seeking to use this case as a vehicle that somehow that we would change the law as it relates to that issue, the jurisdictional law? The jurisdictional issue, Your Honor? Yes. We are raising it and recognizing that this Court's precedent disposes of that issue, but potentially as a vehicle, yes, Your Honor. We've been instructed basically to preserve that issue and we're seeking to preserve it. Okay. Thank you. Thank you, Your Honor. Thank you, counsel. Mr. Bennett, you have time reserved. Yes, Your Honor, just briefly. The only additional point I would like to raise is one other way to look at this case, and it is raised in the brief, is that the decision here is essentially ultra vires. So that goes to the legality of the order itself. It's a legal nullity if it is found to be ultra vires. Here's what should have happened. One of two things should have happened. Either if they're going to reopen on the reopening statute that they applied, should have been sent down to the immigration judge. The immigration judge's duty at that point kicks in under 120 under 124010F. He's got to designate a country. It's an inescapable fact at that point that the Sudan's not going to take him back. So there's got to be an alternative designation. That didn't happen. It didn't happen at all in this hearing. Now, or the alternative would have been for the agency to simply say, okay, this is a 1241.15 case. We've made this determination. No review. And we're going to invoke 1241.15 to preclude the court from even considering this issue. One of those two things should have happened. What the BIA has done here is created a hybrid that does neither fish nor fowl. And that is where the ultra virus issue comes in. It's created something that just doesn't exist. It's gone beyond the scope of the regulations. It's exceeded its authority. It has no jurisdiction under the jurisdictional statute of 103, excuse me, the regulations, since it is a regulatory agency only, to make that determination. And I have no other points besides that. Roberts. Thank you, Mr. Bennett. We thank counsel for the argument. That concludes the calendar for today. And the Court stands at recess until tomorrow. All rise.
judges: Adelman, Farris, Bybee